NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

JAN 8 2026

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JOHN DAVID PETERSON, | No. 23-16146 |
| Plaintiff-Appellant, | D.C. No. 2:19-cv-00949-JAM-JDP |
| v. | |
| NEVADA COUNTY, California; NEVADA COUNTY SHERIFF'S DEPARTMENT, | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Eastern District of California
John A. Mendez, District Judge, Presiding

Argued and Submitted October 23, 2025
San Francisco, California

Before: PAEZ, BEA, and FORREST, Circuit Judges.
Partial Concurrence and Partial Dissent by Judge PAEZ.

Plaintiff-Appellant John Peterson appeals the district court's order which

granted summary judgment in favor of Nevada County, California on all four of

Plaintiff's federal causes of action. We review de novo and view the evidence in

the light most favorable to Plaintiff. *Samper v. Providence St. Vincent Med. Ctr.*,

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

675 F.3d 1233, 1235 n.1 (9th Cir. 2012).  We affirm.

Plaintiff was arrested on the afternoon on September 5, 2018, transported to Sierra Nevada Hospital Emergency Department for a medical evaluation due to concerns around his intake of alcohol and ibuprofen, and, after being medically cleared, brought to Nevada County Jail, Wayne Brown Correctional Facility. Upon his arrival, jail staff from the Nevada County Sheriff's Office completed a Medical Screening Report which stated that Plaintiff "d[id] not appear injured and in need of immediate medical attention" and reported Plaintiff's statement that he "did not have any rashes/cuts/sores."  Plaintiff remained in custody for two days, over the course of which he was seen and evaluated by employees of Wellpath, a company with which the County contracted for medical services, at least nine times.  Some of those visits regarded alcohol withdrawal protocol and others regarded Plaintiff's complaints about a pain in his right leg.  At one appointment regarding his leg pain, a physician's assistant took detailed notes on his complaints, took x-rays of his leg, and scheduled a follow-up appointment.

Before Plaintiff could attend the follow-up appointment, an officer from the Nevada County Sheriff's Office notified Plaintiff that he would be released from custody, as required under Cal. Penal Code § 825 and Cal. Penal Code § 849, because the District Attorney had not filed charges against him within 48 hours. Plaintiff reports that he walked to the booking area with an obvious limp.  He was

then discharged by another officer, after that officer received clearance for his release. Plaintiff left the station without asking any further questions, asking for any medical assistance or transportation, or informing any officer that he was in serious pain. Plaintiff walked about a mile to a gas station and then asked to use the phone to call an ambulance due to the pain in his leg. Plaintiff was transported to Sierra Nevada Memorial Hospital, where he was diagnosed with sepsis. He underwent surgery and now has a significant limp and pain in his leg.

Plaintiff's second amended complaint alleges four federal causes of action. The district court properly granted summary judgment on all federal causes of action before the Court.

1. First, Plaintiff alleged that the County violated his constitutional right to timely and adequate medical care by failing to have adequate policies regarding discharge of inmates and failing to train its officers properly.

Under *Monell*, a county "may be liable under [§ 1983] if the [county] itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978)). "Plaintiffs who seek to impose liability on local governments under [§ 1983] must prove that 'action pursuant to official municipal policy' caused their injury." *Id.* at 60–61 (quoting *Monell*, 436 U.S. at 691). There are three categories of such policy: "[1] the

23-16146

decisions of a government's lawmakers, [2] the acts of its policymaking officials, and [3] practices so persistent and widespread as to practically have the force of law." *Id.* at 61 (citations omitted). Here, Plaintiff claims under the third category that the County had a pattern and practice of not training its jail employees to attend to the inmates' medical needs adequately.

A decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983, but to satisfy the statute, it "must amount to 'deliberate indifference to the rights of persons with whom the untrained employees come into contact.'" *Id.* at 61 (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference . . . ." *Id.* at 62 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997)).

Defendant, relying on a case in which the County reached a settlement without admission of fault with an inmate after he alleged that he had been deprived of adequate medical care, argues that there existed a pattern of similar constitutional violations by untrained employees. *See Howie v. Nev. County*, No. 2:18-cv-03146-JAM-KJN (E.D. Cal. Aug. 22, 2019), Dkt. No. 41. The district court correctly declined to consider the facts alleged in *Howie* in its analysis of

Plaintiff's § 1983 claim. The facts in *Howie*, as alleged by Plaintiff, are significantly different from the facts in this case. *See Connick*, 563 U.S. at 62–63 (holding that violations must be sufficiently similar to put the County on notice that a course of training is deficient in a particular respect). Howie alleged that he sustained a serious knee injury at the hands of officers and repeatedly requested medical attention and a ride to a hospital upon his release, but he received neither medical support nor transportation and was dumped on the curb outside Wayne Brown Correctional Facility. Complaint & Demand for Jury Trial at 7–14, *Howie v. Nev. County*, No. 2:18-cv-03146-JAM-KJN (E.D. Cal. Nov. 30, 2018), Dkt. No. 1. Here, Plaintiff received significant medical attention beyond what he had requested; did not ask medical staff or officers (who had no reason to be aware of the potential severity of his ailments) for transport upon his departure; and walked a mile before deciding he needed further medical attention.

As Plaintiff could not provide any examples of misconduct at the jail outside of *Howie* for the County to be liable under *Monell*, Plaintiff's case must be one of single-incident liability. *See Connick*, 563 U.S. at 63–64 (recognizing that the Supreme Court has left open the possibility that in a narrow range of circumstances "unconstitutional consequences of failing to train could be *so patently obvious* that a city could be liable under § 1983 without proof of a pre-existing pattern of violations" (emphasis added)).

23-16146

This case does not present the rare example of single-incident liability. The County maintained a policy by which medical providers cared for inmates and had exclusive access to inmates' medical records; officers confirmed with medical providers that those inmates were medically cleared to be released; and those officers maintained discretion to request further medical support for an inmate that they determined required further assistance. It cannot be said that it is obvious that these policies would lead to the release of inmates who require immediate emergency care.

2. Next, Plaintiff alleged that Wellpath violated his constitutional right to timely and adequate medical care by failing to have adequate policies regarding discharge of inmates and failing to train its employees properly. This cause of action is not on appeal because the Court previously dismissed the appeal only as to Wellpath under Fed. R. App. P. 42(b) due to Wellpath's bankruptcy.

3. Next, Plaintiff alleged that the County is liable for Wellpath's constitutional violations because the County was the primary "moving force" behind such constitutional violations. The Court rejects this novel theory of liability, as County policy explicitly states that the County is not responsible for the medical decisions of Wellpath employees, and, even if the County were responsible, given that Plaintiff was attended to by medical personnel nine times in two days, no triable issue of fact was presented that the medical personnel were

23-16146

deliberately indifferent to Plaintiff's medical needs.

4. Finally, Plaintiff alleged that the County and Wellpath conspired together to have inmates released before they received adequate medical treatment. To allege a conspiracy under § 1983, a plaintiff must show "an agreement or meeting of the minds to violate constitutional rights." *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002) (internal quotation marks and citation omitted). There is no evidence in the record that might even suggest a triable issue of fact as to the existence of any such agreement.

**AFFIRMED.**

23-16146

*John Peterson v. Nevada County*, No. 23-16146

**PAEZ, Circuit Judge**, concurring in part and dissenting in part.

I concur in the majority's disposition of Peterson's second and fourth causes of action. But I respectfully dissent from the majority's decision to affirm the district court's grant of summary judgment on Peterson's first and third causes of action. In my view, Peterson's first cause of action challenges not only Nevada County's ("County") failure to train its employees, but also its alleged inadequate medical discharge policy. Even as to the failure-to-train theory, I would hold that the objective notice inquiry must be answered by the trier of fact. And Peterson's third cause of action is neither novel nor susceptible to summary judgment. I would thus reverse and remand.

**1.a.** The majority considers only Peterson's failure-to-train theory within his first cause of action. But Peterson also challenges a County policy. "A policy of inaction or omission may be based on failure to implement procedural safeguards to prevent constitutional violations." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012). Operating a jail without sufficient safeguards for inmate health constitutes a policy of inaction. *See Castro v. County of Los Angeles*, 833 F.3d 1060, 1075 (9th Cir. 2016) (en banc) ("The custom or policy, in summary, was to use a sobering cell that lacked adequate audio surveillance to detain more than one

belligerent drunk person while checking the cell visually only once every half hour.").

Peterson challenges at least three facets of the County's discharge policy: who decides medical fitness for release, how that decision is made, and what systems are employed to help make that decision.[1] First, Peterson claims that under County policy, County jail employees—not Wellpath health professionals—decide when patients are ready to be released and how they should be released. Second, Peterson challenges the limited scope of the County's pre-release medical checks and discharge planning, alleging that the County asks Wellpath only if inmates must be held for mental health reasons and does not inquire about an inmate's overall readiness for release or the need for discharge accommodations. Third, Peterson points to the County's "Release Check List" and its one vague box for a "Medical Check," alleging that the single check box is inadequate to ensure that appropriate discharge coordination occurs between Wellpath and the County. The above allegations are substantiated by three consistent depositions of Wellpath employees.

Properly viewing Peterson's first claim for relief as including a challenge to a policy of inaction, it should have survived summary judgment. Deliberate

---

[1] Peterson's dual theories are also evident in his appellate briefing and complaint. In his opening brief, he addresses the alleged failure to train in one paragraph among eight pages dedicated to the first cause of action. And his complaint alleges, inter alia, a "Failure to Have Constitutional Policies" in addition to a "Failure to Adequately Train."

indifference is an objective inquiry that asks whether the local government had "actual *or constructive notice*" that the alleged omission would cause its employees to violate citizens' constitutional rights. *Castro*, 833 F.3d at 1076 (quoting *City of Canton v. Harris*, 489 U.S. 378, 396 (1989)). When a plaintiff challenges a policy of inaction, a trier of fact may infer such notice from a variety of evidentiary bases, including, but not limited to, written regulations and manuals forbidding the alleged conduct. *Id.* at 1076–77. A pattern of similar constitutional violations may suffice to support such an inference, but it is not necessary. *See Tsao*, 698 F.3d at 1145.

In my view, a finder of fact could reasonably infer the County's deliberate indifference. For example, Peterson asserts that it is the County's policy for jail officials to decide fitness for release, and that this decision-making arrangement contributed to his injury. But the County's regulations and manuals required deference to Wellpath medical judgments, "prov[ing] that the County knew of the risk of the very type of harm that befell [Peterson]." *Castro*, 833 F.3d at 1077. The Howie incident also supports an inference of notice. I would thus remand for a trier of fact to decide whether the County's inadequate discharge policies amounted to deliberate indifference.

**1.b.** I would also reverse the grant of summary judgment on Peterson's failure-to-train theory. In support of that theory, Peterson filed a declaration and deposition transcript of Christopher Howie, who was released from the same County

3

jail, with serious medical needs and without discharge planning, eight months before Peterson's discharge. Howie's lawsuit was settled without admission of fault.

Howie's declaration and deposition are admissible to prove a pattern of similar constitutional violations, and the district court erred in excluding this evidence. "[D]eclarations" of third parties who have suffered similar mistreatment as the plaintiff can "raise genuine issues of material fact as to [a] municipal liability claim." *See Henry v. County of Shasta*, 132 F.3d 512, 518 (9th Cir. 1997) (reversing grant of summary judgment for Shasta County). If the third party settles their own claim against the local government, that does not render the facts underlying their settlement inadmissible.[2]

Howie's incident is also sufficiently similar to Peterson's. "Whether a local government entity has displayed a policy of deliberate indifference is generally a question for the jury." *Oviatt ex rel. Waugh v. Pearce*, 954 F.2d 1470, 1478 (9th Cir. 1992). At the summary judgment stage, the only question is whether a reasonable fact finder could conclude that, objectively, the circumstances of Howie's

---

[2] "Relevant evidence is admissible" unless otherwise provided by the Constitution, federal statutes, or other rules. Fed. R. Evid. 402. The Howie evidence is relevant, as it tends to prove that the County was on notice about the need for better policies. While Rule 408 provides that settlement offers and agreements are not admissible to "prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction," neither prohibited use is implicated here, as Peterson does not seek to introduce evidence of the settlement. Fed. R. Evid. 408(a)(1).

discharge from the jail put the County on actual or constructive notice of the need for new discharge training or policies. *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *Castro*, 833 F.3d at 1076. Viewing the evidence, and drawing all inferences, in the light most favorable to Peterson, *Henry*, 132 F.3d at 514 n.1, a reasonable trier of fact could so conclude.

Peterson alleges that the County failed to train its officers to confirm with Wellpath that inmates are medically fit for release, to observe inmates for obvious medical problems, and to plan for medically appropriate discharge, including ambulatory assistance and transportation to the hospital. In my view, a trier of fact could reasonably conclude that this same set of failures contributed to both Peterson's and Howie's incidents—discharged on foot, either struggling or unable to walk, with no discharge planning for their maladies or ambulatory assistance. A reasonable fact finder could therefore conclude that the Howie incident put the County on at least constructive notice of the need for corrective action.[3]

The majority rests its contrary conclusion on dissimilarities that cannot relieve the County of liability as a matter of law. Whether Peterson asked for help is

---

[3]     *Connick* sets out the requirement that prior violations must be similar to put a local government on notice, but "the [*Connick*] Court did not articulate how similar the constitutional violations must be to constitute a pattern." Martin A. Schwartz & Kris Markarian, *Section 1983 Litigation* (3d ed. 2014). We have filled that gap by clarifying that deliberate indifference is an objective notice inquiry that ordinarily belongs to the jury. *Castro*, 833 F.3d at 1076; *Oviatt*, 954 F.2d at 1478.

irrelevant, as Peterson's claim is about the County's policies, not the subjective culpability of the individual officers in this case. *Fairley v. Luman*, 281 F.3d 913, 917 (9th Cir. 2002). And whether he received medical attention during his *confinement* is irrelevant to the appropriateness of his *discharge*. So too with Peterson's ability to walk a mile before collapsing, which may be relevant to the relative seriousness of Peterson's and Howie's physical injuries, but not whether Howie's discharge should have put the County on notice that it was inappropriately discharging inmates by foot rather than by other means. To the extent that these dissimilarities are relevant and susceptible to conflicting inferences, that determination rests with the trier of fact.

**2.** I also dissent from the majority's disposition of Peterson's third cause of action. The majority gives three alternative reasons for affirming, but each is unsound.

First, Peterson's "moving force" claim is not novel. The "moving force" language comes from the foundational requirement of causation set out in *Monell v. Department of Social Services*, 436 U.S. 658, 692–94 (1978). And the basic idea of Peterson's claim is that the County is liable for constitutional violations that it caused, by its policies, through the actions of its contractors. This theory flows from basic propositions. Because *Monell* liability is not vicarious liability, *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997), the nature of the employment

6

relationship between a local government and individual tortfeasor—if any—is irrelevant. Rather, the key questions are the "culpability" of the County and the "direct causal link between the municipal action and the deprivation of federal rights." *Id.* at 404.

Second, whether the County caused the alleged harmful conduct is a factual question that is both material and disputed. The majority is correct that County policy, as written, undercuts the claim that the County was responsible for Wellpath's conduct. But the written policy evidence is contradicted by the consistent depositions of three Wellpath employees, who testified that the County was ultimately responsible for deciding when patients were to be released, without regard to medical fitness. I would thus reverse and remand for a trier of fact to resolve this evidentiary conflict.

Third, even if we assume that no individual Wellpath employee was deliberately indifferent to Peterson's needs, that is neither here nor there. *Fairley*, 281 F.3d at 917 n.4. The only relevant question is whether the County was deliberately indifferent to the risk of Peterson's harm, which collapses with the notice analysis in the first cause of action.

I respectfully dissent.